UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  -against-<br><br>EDGAR VENTURA, UN LEE, YUN LEE-ITO, CELATECH CONSTRUCTION CORP., IEJK REALTY LLC, MJMV HOLDINGS LLC, FEDERICI BUILDERS CORP., CHRISTOPER V. PAPA ARCHITECT P.C., STRUCTURAL ENGINEERING TECHNOLOGIES P.C., A&T ENGINEERING P.C., SANO WRECKING LLC, and ELLIOT DEVELOPMENT CORP.,<br><br>    Defendant. | **MEMORANDUM AND ORDER**<br>Case No. 21-CV-2177 (FB) (JRC) |

*Appearances:*
*For the Plaintiff*:
MAUREEN E. O'CONNOR
L'Abbate, Balkan, Colavita & Contini, L.L.P.
3 Huntington Quadrangle, Suite 102-S
Garden City, NY 11530

*For Defendant IEJK Realty LLC:*
MICHELLE CALLNER
Redmond Law, PLLC
80 Broad Street, Suite 1202
New York, NY 10004

*For Defendants Un Lee and Yun Lee*:
MAGDALENE P. SKOUNTZOS
Brody, O'Connor & O'Connor
535 Eigth Avenue, Ste. Fl. 19
New York, NY 10018

*For Defendant Edgard Ventura:*
Marc E. Freund
Lipsig, Shapey, Manus & Moverman, P.C.
40 Fulton Street
New York, NY 10038

1

**BLOCK, Senior District Judge:**

Plaintiff American Empire Surplus Lines Insurance Company ("American Empire") brought this action for declaratory relief against Defendants Edgar Ventura ("Ventura"), Celatech Construction Corp., IEJK Realty LLC ("IEJK"), MJMV Holdings LLC, Federici Builders Corp., Christopher V. Papa Architect P.C., Structural Engineering Technologies P.C., A&T Engineering P.C., Sano Wrecking LLC ("Sano"), and Elliot Development Corp., as well as Defendant-Counterclaimants Un Lee and Yun Lee-Ito (the "Lee Defendants"). Before the Court is American Empire's motion for summary judgment against Ventura, the Lee Defendants, and IEJK, as well cross-motions for summary judgment by each of those Defendants. For the reasons described below, American Empire's motion is denied and the motions by IEJK, Ventura, and the Lee Defendants are granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and are uncontested unless otherwise noted.

American Empire issued two commercial general liability and two commercial excess insurance policies (the "Policies") to nonparties Disano Demolition Co., Inc. and Disano Construction Co., Ins. (collectively, "Disano") in 2016 and 2017. The Policies provided defense and indemnification to Disano and other insured entities for sums that they may "become[] legally obligated to pay as

damages" due to covered "bodily injury" or "property damage"; they also provided that American Empire has the "duty to defend the insured against any 'suit' seeking those damages." IEJK Mot. Summary Judgment, Ex. 6 at 8. The policy periods ran from June 25, 2016 to July 25, 2017, and July 25, 2017 to July 25, 2018. Premiums were defined as a portion of Disano's estimated gross receipts, with the potential for upward adjustments if Disano's receipts exceeded expectations. The Policies empowered American Empire to audit Disano at the end of each policy period and collect any additional premiums owed due to the audits.

An independent auditor working on American Empire's behalf found that Disano's gross receipts exceeded its estimates for all of the relevant policy periods, requiring further premium payments from Disano totaling $216,394. Disano failed to pay the adjusted premium, and American Empire sued Disano to collect it (the "Disano Action"). On January 6, 2021, Judge Nicholas G. Garaufis entered a default judgment in favor of American Empire against Disano for $284,048.05 and granted a declaration terminating American Empire's obligation under the Policies to defend or indemnify Disano (the "Disano Order"). *Am. Empire Surplus Lines Ins. Co. v. Disano Demolition Co.*, No. 18CV5047NGGCLP, 2021 WL 21722, at *5 (E.D.N.Y. Jan. 4, 2021).

Meanwhile, Disano and the Lee Defendants faced a personal injury action filed by Ventura in Queens Supreme Court (the "Ventura Action"), which the Lee

3

Defendants defended. American Empire refused to defend or indemnify Disano in relation to that action. An additional Queens suit against Disano was then filed by IEJK for property damage (the "IEJK Action"), which American Empire also refused to defend. The Ventura Action sought recovery for bodily injury that occurred on October 27, 2017, while the IEJK Action (collectively, the "Underlying Actions") concerned a loss occurring in September 2017.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if evidence produced in the pleadings, discovery materials, and affidavits "is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under governing law." *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 16 (2d Cir. 2021) (quoting *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020)). All ambiguities and factual inferences are resolved "in favor of the party against whom summary judgment is sought." *Id.* (citing *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019)). "Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial, and cannot rely merely on

4

allegations or denials contained in the pleadings." *Pik Quan Leong v. 127 Glen Head Inc.*, 102 F. Supp. 3d 450, 453 (E.D.N.Y. 2015); *see* Fed. R. Civ. P. § 56(c).

### III. DISCUSSION

American Empire seeks a declaratory judgment that it has no obligation under the Policies to indemnify or defend Disano in relation to the Underlying Actions. In turn, Ventura, IEJK, and the Lee Defendants each seek a declaration that American Empire is required to indemnify and defend Disano in the Underlying Actions. The Lee Defendants also seek reimbursement for costs and fees they incurred defending the Ventura Action.

#### a. American Empire's Obligations under the Policies

American Empire argues that IEJK, the Lee Defendants, and Ventura are collaterally estopped by the Disano Order from seeking relief under the Policies. "The fundamental notion of the doctrine of collateral estoppel, or issue preclusion 'is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies.'" *Tobin v. Gluck*, 11 F. Supp. 3d 280, 303 (E.D.N.Y. 2014) (quoting *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)). Collateral estoppel applies to bar the "relitigation of an issue 'when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a

full and fair opportunity to litigate the issue in the prior action'" *Id.* (quoting *Denton v. Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985)). It is American Empire's burden to establish collateral estoppel beyond a reasonable dispute. *Id.*

Because the Disano Order was a default judgment, it does not have collateral effect. "[U]nder New York law, collateral estoppel forecloses only those issues that have been 'actually litigated and determined in a prior action,' and '[a]n issue is not actually litigated if there has been a default.'" *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 350 (S.D.N.Y. 2012) (quoting *Yoon v. Fordham Univ. Faculty & Administrative Retirement Plan*, 263 F.3d 196, 202 n.7 (2d Cir. 2001)).

American Empire argues that the issues of indemnification and defense were actually litigated because the Disano action was contested for two years before Disano defaulted by failing to appoint new counsel. While American Empire and Disano may have litigated these issues for a time, the Disano Order was not a product of that dispute, but of Disano's default. *See Am. Empire Surplus Lines Ins. Co. v. Disano Demolition Co.*, No. 18CV5047NGGCLP, 2020 WL 1914772, at *4-5 (E.D.N.Y. Jan. 2, 2020), *report and recommendation adopted in part, rejected in part*, 2021 WL 21722.

The question therefore remains whether American Empire had a duty to indemnify Disano in the Underlying Actions. Ventura, IEJK, and the Lee

6

Defendants argue that American Empire failed to timely deny coverage under the terms of the 2017 Primary Policy and under applicable law.

The Policies required American Empire to give at least ten-day notice prior to cancelling coverage for nonpayment of a premium. Here, American Empire canceled the Policies for nonpayment on October 15, 2018, retroactively effective to May 26, 2018. It did not send any notice of cancellation until January 22, 2020, in violation of its own contractual language. American Empire counters that its ability to disclaim coverage did not arise until the Report and Recommendation underlying the Disano Order was issued on January 4, 2021. It insists that it then gave notice to Disano just days later on January 14, 2021. However, this timeline contradicts American Empire's own account in its supporting papers, where it states that the Policies were "cancelled effective May 26, 2018." Opp to Ventura SJ at 13. It therefore failed to cancel the Policies under the terms of its own contract language. *Am. Empire Surplus Lines Ins. Co. v. L&G Masonry Corp.*, 194 A.D.3d 401, 402 (2021) ("The insurance contract at issue provided specific notice requirements for plaintiff for cancelling the policy, and plaintiff did not cancel it before the underlying claims arose.").

American Empire also failed to properly cancel the Policies under applicable law. New York Insurance Law § 3420(d)(2) requires that written notice of disclaimer of liability or denial of coverage be provided "as soon as is reasonably

7

possible." N.Y. Ins. Law § 3420(d)(2); *United States Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 341 (E.D.N.Y. 2018). "Timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage," *id.* (cleaned up), which occurs "'once the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage.'" *Netherlands Ins. Co. v. United Specialty Ins. Co.*, 276 F. Supp. 3d 94, 106 (S.D.N.Y. 2017) (quoting *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64 (2003)). American Empire first learned of its ability to disclaim coverage when it completed its premium audit for the policies on October 25, 2018 and issued a "Cancellation Audit Endorsement" on that date. Ventura Mot. Summary Judgment, Ex. Q.

Furthermore, New York Insurance Law § 3426(c) mandates that "[a]fter a covered policy has been in effect for sixty days," unless properly canceled, "no notice of cancellation shall become effective until fifteen days after written notice is mailed or delivered to the first-named insured." N.Y. Ins. Law § 3426(c). This provision applies to cancellations resulting from outstanding increased premiums arising from an audit. NY Insurance Law § 3426(c)(1)(A); Office of the General Counsel, *Re: Increased Premium After Audit*, https://www.dfs.ny.gov/insurance/ogco2004/rg040617.htm (accessed April 13, 2023); *see also Speziale v. Nat'l Life Ins. Co.*, 328 F. Supp. 2d 295, 301 (N.D.N.Y.

8

2004), *aff'd*, 159 F. App'x 253 (2d Cir. 2005) ("statutes requiring notice before forfeiture of a life insurance policy for nonpayment of the premiums are to be construed strictly in favor of the insured").

American Empire argues that Section 3426 does not apply to it because it is an excess and surplus line insurer. Section 3426(l)(2) removes from § 3426's purview "policies written on an excess line basis." N.Y. Ins. Law § 3426. In New York statutory language, "excess" has the same meaning as "surplus." *IDW Grp., LLC v. Levine Ins. Risk Mgmt. Servs., Inc.*, 969 N.Y.S.2d 376, 387 (Sup. Ct. 2013) ("In New York, surplus lines is synonymous with excess lines, and [the New York Department of Insurance] uses the term 'excess lines' in lieu of 'surplus lines' merely to refer to the statutory language." (cleaned up)). Here, Ventura, IEJK, and the Lee Defendants seek relief under both the general liability and excess policies from 2017. It cannot be the case that all policies issued by American Empire are exempted from § 3426 simply because it has "Surplus Lines" in its name. Indeed, courts have imposed § 3246's strictures on American Empire before. *See American Empire Surplus Lines Ins. Co. v. L&G Masonry Corp.*, No. 652695/2018, 2020 WL 2332814, at *2 (N.Y. Sup. Ct. May 07, 2020) (applying requirements of § 4326 to policy issued by American Empire). Therefore, § 3426 invalidates American Empire's cancellation of the general liability policies. American Empire

9

has not demonstrated that it validly canceled the Policies before January 22, 2020, under New York law or the terms of its own contract.

Even if the cancellation was proper, each of the three incidents giving rise to the Underlying Actions occurred prior to the effective date of American Empire's purported cancellation, May 26, 2018. *See Stein v. Sec. Mut. Ins. Co.*, 38 A.D.3d 977, 979 (2007) ("[a]s defendant elected to cancel plaintiffs' policy rather than rescind it . . . , the policy was in full force until the cancellation notice's stated effective date," entitling indemnification for the insured's "loss that occurred before the cancellation date chosen by defendant").

It is undisputed that the Policies provided that American Empire must defend and indemnify Disano against "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." Ventura 56.1 Statement ¶ 6. It is also undisputed that the Ventura Action and IEJK Action are a personal injury and property damage action, respectively, and concern losses which took place during the relevant policy period. Ventura 56.1 Statement ¶ 8; IEJK 56.1 ¶ 8. Because American Empire never properly canceled the Policies, and because the losses giving rise to the Underlying Action took place before the date that American Empire claims to have canceled the Policies in any case, American Empire must defend and indemnify Disano in the Underlying Actions under the Policies.

10

b. **The Lee Defendants' Counterclaims**

The Lee Defendants also move for summary judgment on their counterclaim, which seeks a declaration that American Empire must indemnify Disano in the Ventura Action and reimburse the Lee Defendants' attorneys' fees and costs incurred defending that Action. The former issue has already been resolved above. The Lees provide no argument in support of their request for reimbursement. It is generally true that "[w]here an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action." *United Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 267-68 (S.D.N.Y. 2013). Because the Lee Defendants fail to provide any support for their counterclaim, however, the Court can only declare that American Empire must reimburse previously incurred defense costs; it reserves judgment as to how much is owed until the Lee Defendants support their motion with information justifying a specific amount requested.

## IV. CONCLUSION

For the reasons explained above, American Empire's motion for summary judgment is DENIED. IEJK, Ventura, and the Lee Defendants' motions for summary judgment are GRANTED. American Empire is obligated to defend and indemnify Disano in the Underlying Actions pursuant to the terms of the Policies.

11

American Empire must also reimburse the Lee Defendants for fees and costs incurred in defending the Ventura Action.

**SO ORDERED.**

                                                                     /S/ Frederic Block
                                                                     FREDERIC BLOCK
                                                                     Senior United States District Judge

April 25, 2023
Brooklyn, New York